the fourth district appellate court of the state of illinois has now convened the honorable craig hd armand presiding morning counsel next case we'll call is 4-21-0544 people of the state of illinois versus matthew a anderson could counsel for the appellant please state your name for the record good morning i'm daryl omen and i represent the appellate matthew anderson thank you and counsel for the appellee could you please state your name for the record my name is kim knopf and i represent the people of the state of illinois thank you counsel mr omen you may proceed thank you good morning your honors and may it please the court again i am daryl omen and i represent the appellant matthew anderson in this case i raised two issues in my brief first that the evidence was insufficient to prove that mr anderson personally shot and killed curtis hairston approximately causing his death during a soldiers indicator and the second issue is that the lead detective's testimony contains improper hearsay and narration of a surveillance video that was admitted at the trial in this case with respect to the first issue i'll briefly highlight not the evidence used to convict mr anderson because there is very little of that rather i'll highlight the lack of evidence that mr anderson personally fired the shot that approximately caused mr harrison's death which was the burden that the state accepted when it decided to obtain the 25 to life add-on to the first degree murder conviction in this case the surveillance video only shows the outside of the bathroom the only person in the video identified by trial witnesses is mr hairston who had collapsed outside of the bathroom and identified themselves to responding emts before you proceed when you say the video only shows outside of the bathroom but there were other cameras in the restaurant one of which was a camera that was in the front part of the restaurant and which did clearly depict defendant as he entered the restaurant is that right two parts to the answer first there are in fact multiple camera angles that's correct my point about not depicting the inside of the camera angle show the inside of the bathroom where the shootout took place i absolutely do not agree with your honor second point that it clearly shows the defendant nor was the case tried in that manner the videos are kind of mid-tier quality they do show four black men and i want to be clear the reason that i've argued the case in my briefs the way that i have explaining the four men and distinguishing them based on their outerwear is so that when your honors reviewed the video which i'm sure some or all of you already have you know exactly precisely who i'm talking about what to talk about curtis harrison who we know because he collapsed at the scene is a man wearing a gray hoodie in the video there's also a man in a red hoodie a man in a black and white jacket and a man in a white kind of puffy jacket it has a hood not not clear whether it's attached or underneath um so yeah counsel you know if i guess uh throughout this argument will probably agree to disagree in regards to your characterization uh because i did review the video that you uh referred to uh the multiple angles uh to me the video itself appeared to be clear uh the colors uh appeared to uh be true and uh would appear to me that your client is recognizable in the business in the uh the video and uh the hood that he is seen wearing is gray in color uh we of course will agree to disagree but that that's not conclusive because even if all of your honors agree that he's clearly depicted in the video i'll return to the actual burden facing the state is not to prove that he was inside the long john silvers that day or that entered the bathroom the burden on the state in addition to the requirements of proving first degree murder is to prove that he's the person who fired the shots that approximately caused the death of the decedent curtis harrison and there's certainly no evidence of that regardless of how you feel about the video which returns to my earlier point that there's not video of the inside of the bathroom where the shootout took place so even if your honor feels that the video shows mr anderson being present along john silver entering the bathroom fleeing the long john silvers that doesn't prove that he shot anyone doesn't even prove that he had a gun on that day the state's burden in this case was much higher than that and the video is not remotely sufficient proof to prove that burden beyond a reasonable doubt and i'm sure you'll get to this and talk about mr sizely but an eyewitness who identified a man with a gray hooded sweatshirt uh with a gun um and uh that would be consistent with uh uh defendant correct again i'm sure your honor as your honor mentioned will agree to disagree on this but your mention of a gray hooded sweatshirt clearly describes the decedent it's beyond clear that again assuming for the sake of argument matthew anderson's depicted in the video he's wearing a white coat and it may have a gray hood but the coat itself is white the coat was admitted into evidence contained in the exhibits presented to this court and in fact detective niram testified that he was wearing a quote white north face downfill jacket and i cross examination he clarified that it was quote a white jacket close quote and not a gray hoodie again he may have had a gray hood i'm not trying to be deceptive here it shows what it shows but i think it's beyond dispute that it was a white north face downfill jacket there's even testimony from the detectives who came to collect evidence at the scene that there was some sort of downy material protruding from the jacket so i think we're all familiar with this sort of a coat and it can be distinguished in plain terms from what we're also very familiar with which is a gray hoodie it's a very very common form of male dress i think throughout the state uh your honor mentioned the testimony of george sisley which he was the only eyewitness to testify at trial but yet he did not testify and make an identification of my client in fact officers took him to the hospital to identify mr anderson and he made quote a negative identification that appears in the transcripts on pages 387 to 88 mr sisley was present in the courtroom during the trial with my client sitting at the defense table he did not make an in-court identification of my client as the person in the gray hoodie firing the shots was he specifically to make an in-court identification he was not and that's because the state knew that he had not made a previous identification in fact it would be improper for him to make an identification at trial if that information had not been under the defense previously but not only did he fail to make an identification the record shows that he made a negative identification all of his testimony about the man in the great league was not about my client so regardless of how we view the videos subjectively or agree to disagree we can't disagree about what mr sisley testified to he testified about a man firing into the bathroom and again as your honors are going through the video i'd ask you to focus on the sequence of events in the order with which people left the bathroom first the man in the red hoodie second the man in the white jacket who were assuming for the purpose of this argument is my client then the man in the gray hoodie decedent curtis harrison who mr sisley testified the man in the gray hoodie was firing into the bathroom referencing again the camera angles available and the record in this case mr sisley was standing towards the front of the restaurant and looked back towards the back into the bathroom made a very different point of view than i would say the most salient camera angle from the surveillance video which is side on to the door of the bathroom mr sisley was looking at it this way from the front of the restaurant he was able to see into the bathroom was ever able to see the man in the gray hoodie firing again this is the second value of shots again to be clear there were two values of shots first volley the man in the red hoodie almost knocked over mr sisley and his wife leaving the restaurant the sequence of events shows that the man in the white jacket was right behind and at this point the only two people left in the bathroom were the man in the hoodie gray hoodie curtis harrison and the man in the black and white jacket so according to mr sisley's testimony the man in the gray hoodie was firing a handgun in the bathroom the only person in the bathroom at that point in addition to mr harrison's the man in the black and white jacket and we have no properly admitted information who this person is the state's argument simply assumes he was met with mr harrison but it presented no evidence to that effect and the evidence shown from the surveillance video as i've argued tends to indicate the opposite and again emphasizing the actual precise burden facing the state it's very significant that the fired a handgun the murder weapon in this case according to the pathologist and the firearms examiner was a 44 caliber firearm presumably a handgun so we're talking about something like a 44 revolver there's this would have been easily seen it's not analogous to what's shown on the video of the state's going to contend that he was shown pulling this 44 handgun out of his pocket when their own lead detective in this case detective my room testified that you cannot tell based on the video whether it's a handgun and it can in fact be just a cell phone and that appears in during his testimony at pages 608 to 611 of the report of proceedings can you make of the uh the uh the jail uh uh phone conversation that was recorded where your client is asking somebody to try to find a cell phone cover that looks like a revolver that's a question to you oh sorry yes um during the during the conversations a lot of which is really unintelligible what is clear is he is discussing his defense strategy and what he had discussed with his defense attorney and what sort of evidence he might present that might be incriminating i think he anticipated this argument that the state is making an appeal that they're going to say that this is a gun he's pulling out of his jacket this is before detective naira and the lead detective in this case testified that you can't tell and again your honor is based on her own view to tell that a small black rectangular object is not consistent with essentially the equivalent if not exactly a 44 magnum revolver again there's no 44 caliber shell cases uncovered at the scene so i think the physical evidence tends to indicate the murder weapon was a 44 revolver and not some tiny black 22 semi-automatic or something that even arguably could be consistent with a small black rectangular object with respect to the second issue i'd like to focus on primarily the way that the officer improperly narrated this surveillance video and told the jury that one of the men quote is later identified close quote is mr anderson which appears on pipe page 581 of the report of proceedings the rule announced by the illinois supreme court in thompson indicates that this sort of testimony is improper because the officer was in no better position to testify about what was appearing on the video and as your honor pointed out the justices of this court themselves could evaluate the video themselves not providing any helpful testimony by saying who is in the video and who's doing it in fact the only basis for that testimony is inadmissible hearsay second thompson also provides that even where such evidence is properly admitted it must be preceded by an instruction telling the jury how to interpret such evidence and that these instructions must begin a second time at the inclusion of the evidence along with the other jury instructions that did not happen in this case so thompson provides two independent reasons why assuming for the sake of argument this court does not agree to reverse outright it should at least at the very least remain for a new trial in light of this improper testimony and the other improper argument in my briefs the state's only response to this is to offer a single case people versus mister which is very very clearly distinguishable both on its facts and the legal issue presented mister first of all is not even an identification case the witness who testified concerning the surveillance video in that case did not identify the defendant as appearing in the video second it does talk about narrating the surveillance video so it is at least somewhat on point in this case the facts are markedly different in that this was a casino supervisor talking about five hours of footage gleaned from numerous video cameras across the entire casino complex and this court very reasonably concluded that it would be a waste of the jury's resources and the court's resources to pour over that video in an attempt to try to figure out what's happening that it should avail itself and be helpful to the jury which is the standard rule here for the casino supervisor to testify in this manner that's very very different than the relatively short clips in this case which your honors have already reviewed it surely would not be a waste of time for the jury to pour over that evidence which is the most salient evidence in this case so for all these reasons and the additional reasons of my brief this court should reverse this conviction and if it's not willing to go that far at least remand for a new trial without improper who say a narration testimony thank you all right thank you counsel you'll have an opportunity in rebuttal uh mr knopfke you may proceed may please the court counsel i think the evidence in this case is consistent with a pre-planned hit on harriston and it supports the inference that defendant was the hitman that shot and killed harriston i noticed the defendant's brief the he raises three reasonable doubt arguments basically one the defendant there was no evidence the defendant was even there there was no evidence that defendant participated in the shootout and there was no evidence principally that that defendant actually shot harriston i'd like to address each one of those um we have the the defendant was there we have the fact that he showed up at the hospital shortly after the shootout with a gunshot wound in a correlative wearing the gray hoodie with a defect in the hoodie that would be consistent with him having been shot to me that's very salient evidence the defendant was in fact there in addition while the defendant was in custody and this has already been a reference he spoke to people on the outside and basically acknowledged that he was present while encouraging the person to whom he was speaking to look for photos of cell phone that would resemble the handle of a gun and third defective detective near him identified defendant on the video as far as defendant participating in the shooting we have the video itself which shows defendant coming into the restaurant sitting in a booth outside the the restroom seemingly waiting for something at the precise moment that the man in the red hoodie comes out of the restroom defendant gets up passes that individual simultaneously you see defendant lean into the restroom appearing his his arms are not at his side this is after he's pulled out whatever it was he had in his pocket which is pretty clearly it was a gun he extends his hands in front of him and then you see a puff of smoke after that puff of smoke you see defendant exit come back because he's apparently dropped something which I would suggest is probably a gun or shell casings pick them up and run off the other individual defendant wants to suggest that the other individual the men the black and white coat might have been involved in this shooting but clearly he was aligned with Mr. the man in the black and white coat came out after the shooting he appears to check on the condition of Harrison and then seemingly very concerned about his safety that the man in the white coat black and white coat safety he cautiously goes out of the restaurant there's nothing to indicate that that he was involved in the shooting or that he was anything other than aligned with Harrison and then we have the two people that were shot in the shootout it was an exchange of gunfire obviously between defendant and Harrison those are the only two people that that were shot so it seems clear that the defendant was a participant in the shooting counsel can I ask a question about the the man and the or the individual and the red sweatshirt and then the individual you've identified as defendant wearing the gray hoodie the video which shows the man in the red sweatshirt coming out of the the restroom and defendant at the same time entering it almost looked timed or coordinated was there a theory presented at a trial by the state is that the the two were acting in a coordinated fashion or what was the theory there I actually don't recall a theory presented to that effect I mean it I do not recall that but from the timing of their actions it seems to me that it it would have had to have been a coordinated thing you you see defendant at the moment that the man in the red hood hoodie comes out of the restroom you see defendant jump up and charge into the restroom you know I'm trying to think of reasons why the defendant would do that if there was no coordination uh an urgent need to use the restroom seems unlikely an urgent need to take a picture of someone in the restroom with a camera seems unlikely I mean it seems the only reasonable inference is that this was coordination between these two individuals and they were setting up Harrison to be shot and killed because the evidence was uh that this was a uh a deal that was going down in the restroom involving an exchange of handguns right right that's correct but um but I don't think the theory was actually presented at least not that I recall um that to the effect of uh that there was a coordination or planned coordination the circumstances uh uh pointed out the obvious uh uh you know problem with Mr. Cicely not being able to identify defendant uh in the uh photograph how was that handled by the state uh during uh closing argument do you remember um I'm sorry I don't specifically recall how the state handled that uh either I think that uh obviously it's a very emotional situation where you know an individual sees someone start firing um they're from that point on I mean they're they're concerned for their own safety so um but no I don't recall how the state handled that particular matter okay thank you um and and the the third the third question here is whether defendant actually shot excuse me whether defending defendant actually shot Harrison which you know supports the add-on um we have uh again two people shot in the restroom um the the uh the the two there are the exchange of gunfire uh the weapons that were found in the restroom none of those fired the shots that killed the Harrison and I have to say that the it seems clear that that Harrison was aligned with the man in the black and white jacket so he he was not the instrument of Harrison's um and and I guess uh it also seems clear to me if um and I assume clear also to the jury the defendant's actions um in charging at the restroom and firing um were aggressive pre-planned and that alone would support the inference that he shot Harrison um I'd like to address um the question of Detective Niren's identification of defendant on the video since that was also addressed I'd point out first that defense counsel invited any error because defense counsel said I don't have any problem with the detective identifying uh the defendant on the video um so first of all the error was if if there was an error which I submit there was not it was invited beyond that defendant forfeited the issue by failing to properly preserve it and beyond that I would say that the testimony was proper under this court's decision in in mister uh after the supreme court decided Thompson this court decided uh mister in in that in that case in mister at paragraph 71 this court talks about um as it relates to an identification from a surveillance recording the court referring to Thompson found such testimony helpful where quote there is some basis for concluding the witness is more likely to correctly identify the defendant from the surveillance recording than the jury um in this case there was a reason to believe that the defective would the detective would be more likely to identify defendant because during the period pre-trial period when it was discussed whether this whether this testimony would be allowed it was pointed out that the defendant or that a detective was familiar with the defendant from previous encounters it was that the defense counsel was trying to keep out of the trial any mention of that but that very familiarity supports the identification of the defendant in the video by the detective although not required a sustained contact intimate familiarity or special knowledge of the defendant would support the admission of this kind of testimony now council has mentioned that the supreme court in Thompson did mention an instruction that could be given in this regard I think the language from Thompson is that an instruction should be given I would acknowledge that in I think the the appellate court first district's decision instead um the appellate court characterized that as a mandatory requirement in Mr. in which was post Thompson this court didn't require any such instruction didn't even mention it even though there was no such instruction given and nevertheless found this that instruction is not required also given the evidence in this case given that it's overwhelming I don't think there would be any prejudice from failure to give such an instruction unless the court has some other any other questions I I think I'd stand on what's in our brief and I'd ask the defendant's conviction be affirmed I see no questions thank you counsel Mr. Ullman rebuttal hey please the court I have only two fairly brief points on rebuttal with respect to my first argument proposing council argued that there was evidence of a pre-planned hit again to be specific this evidence came from the decedent's cell phone he had a chat conversation with another individual who wasn't Mr. Anderson indicating that he was in the process of setting up a gun deal in the bathroom of a long john silver's the fact that is not mentioned in the chat and that the chat was with a different person proves that that person had a motive if the state's correct if this was a gun deal gone wrong this plan set up it that person set up the hit that person executed the hit the state repeatedly argued that because Mr. Anderson was shot that's evidence that he in fact was a shooter this court knows that it just well known that bullets do not have names on them there's a shootout in a small bathroom anyone could have been shot bullets could ricochet any number of things could have happened the mere fact that he was received a handgun injury is not remotely sufficient to prove beyond a reasonable doubt that he personally shot and killed the decedent approximately causing his death counsel let me interject and ask a question because essentially your position is there was not sufficient evidence showing that your client was present possessed firearm discharged fire and those are the three big issues but I want you to address sort of the elephant in the room with regard to the totality of the circumstances you know just a couple of quick things defendant the chat information the jail conversation the showing up the hospital same time similar identifications with the gunshot wound what are we to do with that you can parse out all these different arguments and beat them up piecemeal but taking this totality of the circumstances how do you deal with that I believe it would be perfectly reasonable for this court to conclude based on the totality of circumstances that my client may have been present along John Silver's may have been in the bathroom possibly aligning with someone in the bathroom what I'm parsing out is not the evidence I'm parsing out the elements of the effects because that has significant impact on my client who's serving a 50-year sentence half and with fully half of which comes from an element that the state chose to allege and instruct the jury that he personally fired the shot that approximately caused the deceased death so the totality of the circumstances is a correct approach but this court also needs to look at the specific elements of this case now while I understand your generally the Illinois Supreme Court decision people versus Smith says that it's appropriate to reverse in cases like this one where the state's key eyewitness is not a very good one again Mr. Sicily does not identify my client in fact makes a negative identification and there's a lack of other corroborating evidence for example and to prove that he fired a handgun or fired the handgun approximately caused deaths we see that in a myriad of other cases where there's finger ballistic evidence connected to the defendant DNA evidence if he was shot on the scene he bled on the scene there was blood in the bathroom he collected the DNA from the blood and matches of the defendant GSR he was wearing a white puffy coat he had fired a 44 caliber handgun there would have been gunshot residue all over his sleeve it was never even submitted for analysis so I would say the evidence was extremely lacking with respect to that mandatory element which results in half of my client sentence and again quickly with respect to the second issue the the error in this case was not invited the portion of the transcript pointed to by the state discusses the defendant's second motion eliminate which is just a generic bad acts other crimes motion that's totally typical in criminal cases what he was trying to put out and again the state concedes in its brief on page 10 that the officer's identification of the defendant in the he's just trying to prevent proactively the officer from testifying that he had prior contacts with the defendant and other criminal cases which to the state's credit they know that that's improper and the trial prosecutor conceded the issue did not object to the motion it was granted without objection so the sort of thing that was conceded certainly was not open invitation to say identify everyone in the video introduce any manner of hearsay testimony in the and certainly not inviting the court not to instruct the jury as reported by Thompson and Stitz as the state has just acknowledged well defense counsel said you know he quote did not have any problem with an officer with the officer saying I know who he is he being defendant so I'm not able to reconcile what you just said with that quote I mean that's correct that's basically the ultimate conclusion any sort of motion eliminate of this nature the officer is allowed to say I know who he is he's not allowed to say why because bad acts and other crimes which is admissible what he wasn't allowed to say is he was later identified as Mr. Anderson he was later identified as another person in the video and in fact he for people in the video at least purported to there's no basis for the identifications other than information that he was given as the lead investigator in the case that's hearsay that's improper it's not admissible as course of conduct it's not admissible under rule 701 it's not admissible under peaceful people versus Mr. and it wasn't invited by this mere reference to emotion and lemonade trying to prevent other bad acts therefore this court should at the very least reverse and remand for a new trial thank you all right thank you counsel the court will take this matter under advisement the court stands in recess